NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: | BAP No.  EC-13-1048-KiPaJu |
| ERNEST FELIPE ROQUE, | Bk. No.  11-15299 |
| Debtor. | Adv. No.  11-1217 |
| ERNEST FELIPE ROQUE, | |
| Appellant, | |
| v. | **M E M O R A N D U M**[1] |
| RAFAELA YNIGUEZ, | |
| Appellee. | |

Submitted Without Oral Argument
on October 18, 2013[2]

Filed - January 31, 2014

Appeal from the United States Bankruptcy Court
for the Eastern District of California

Honorable Frederick E. Clement, Bankruptcy Judge, Presiding

Appearances:    Appellant, Ernest F. Roque, pro se, on brief; Cyril L. Lawrence, Esq. on brief for appellee, Rafaela Yniguez.

Before: KIRSCHER, PAPPAS and JURY, Bankruptcy Judges.

---

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

[2] On August 26, 2013, the Panel unanimously determined that this appeal was suitable for submission on the briefs and record without oral argument pursuant to Fed. R. Bankr. P. 8012.

Appellant, chapter 7[3] debtor Ernest Felipe Roque ("Roque"), appeals an order of the bankruptcy court granting the motion of appellee, Rafaela Yniguez ("Yniguez"), for summary judgment determining that Roque's debt to her was excepted from discharge under § 523(a)(2)(A). Roque also appeals an order denying his motion for a continuance of the motion for summary judgment and two orders granting Yniguez's motions to compel discovery. We AFFIRM the order denying Roque's motion for a continuance and AFFIRM the orders granting Yniguez's motions to compel. However, because the record does not support the order granting summary judgment under § 523(a)(2)(A), we VACATE and REMAND.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A. Prepetition events

Yniguez is a former employee and the ex-fiancee of Roque, who owns and operates an insurance agency in Los Banos, California. This nondischargeability action arises out of a series of loans Yniguez made to Roque for the purpose of developing his insurance business, EFR Insurance Agency ("EFR"), which at the time was being operated as a sole proprietorship.

On September 18, 2009, the parties entered into a written agreement ("Agreement"), wherein Yniguez agreed to loan Roque $25,000 without interest. In return, Roque agreed to pay Yniguez at least $5,000 per year starting on September 18, 2010, for a period not to exceed five years or until the loan was paid in full. In return for not charging interest, Roque agreed that

---

[3] Unless specified otherwise, all chapter, code and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. The Federal Rules of Civil Procedure are referred to as "Civil Rules."

-2-

Yniguez would receive a five percent (5%) ownership interest in EFR and a five percent (5%) ownership share of EFR's net profits starting January 1, 2011.

On November 21, 2009, an addendum was made to the Agreement. Yniguez agreed to loan Roque an additional $22,000 without interest (for a total loan of $47,000.00), with the same payment terms of at least $5,000 per year starting on September 18, 2010, for a period not to exceed five years or until the loan was paid in full. In return for not charging interest, Yniguez would receive an additional five percent (5%) ownership interest in EFR and a ten percent (10%) ownership share of EFR's net profits, starting January 1, 2011.

In addition to the loans evidenced by the Agreement and addendum (the "Written Loans"), and before any payments for those loans became due, Yniguez provided a series of loans to Roque and/or EFR totaling $82,190.00 based on oral agreements:

- February 25, 2010: Roque $36,000 (with an agreement of repayment and a fifty percent (50%) interest in EFR);
- April 21, 2010: Roque $5,000;
- May 24, 2010: Roque $5,000;
- July 3, 2010: Roque $17,500;
- September 10, 2010: EFR $17,500;
- September 14, 2010: EFR $1,190.

After the September 18, 2010 payment for the Written Loans had become due, and Roque had not made any payment, Yniguez made two additional loans to EFR by oral agreement totaling $33,000 — one on October 6, 2010, for $3,000 (for the purchase of office equipment, computer components and software), and the other on

-3-

November 15, 2010, for $30,000 (all loans by oral agreement are referred to as the "Oral Loans;" the Oral Loans together with the Written Loans are referred to as the "Loans").

Yniguez transferred all funds to Roque as agreed. Roque never tendered any payments to Yniguez on the Loans. He also never transferred any interest in EFR to her or shared any of EFR's net profits with her as promised. Consequently, Yniguez filed suit against Roque and his d/b/a EFR in state court on February 14, 2011, for breach of contract. At some point prior to the suit, Roque terminated Yniguez's employment and broke off the engagement.

While the state court suit was pending against Roque and EFR, on April 13, 2011, Roque, as the sole shareholder, created EFR Insurance Agency, Inc. ("EFR Inc.") and transferred all of EFR's assets to the newly-formed corporation. Prior to this, Yniguez had obtained an entry of default against Roque and EFR. She did not discover EFR Inc.'s existence until mid-May 2011.

**B.    Postpetition events**

Roque filed an individual chapter 7 bankruptcy case on May 6, 2011, valuing his d/b/a EFR at $5,100 and representing that his checking and savings accounts held $16.00. In his Schedule F, Roque listed the state court suit with Yniguez, but did not list the loan debt. He did not disclose an interest in EFR Inc. anywhere in his petition.

According to Yniguez, the state court entered a default judgment against Roque and EFR on May 16, 2011, but we have no documentation proving this fact in the record. However, because of the pending bankruptcy, Yniguez made no attempt to collect on

-4-

the default judgment.

When Yniguez discovered that Roque had created EFR Inc. prior to his filing bankruptcy, she amended her state court complaint to include the corporation as a defendant. EFR Inc. was served, and Yniguez later submitted a request for judgment against EFR Inc. The state court denied her request, determining that the bankruptcy court first had to rule that EFR Inc. was not part of Roque's bankruptcy estate.

## 1. The nondischargeability action

Yniguez filed an adversary complaint against Roque on August 23, 2011, seeking a determination that the Loans were excepted from discharge under § 523(a)(2)(A).[4] Yniguez alleged that Roque had knowingly made false representations when he promised to repay the Loans in order to obtain $162,190 from her, that she relied on his representations, and that she had been damaged in the amount of the lost funds, plus interest, as a result. Yniguez also prayed for attorney's fees and costs.

Roque's initial answer denied all allegations in the complaint. For reasons unknown, Roque filed another answer on or about June 8, 2012, this time admitting the indebtedness to Yniguez (although not the amount), but denying all other allegations in the complaint.

The bankruptcy court ordered that all discovery be completed by April 13, 2012.

/ / /

---

[4] Yniguez's complaint also sought to deny Roque's discharge under § 727(a)(2). This claim was later denied upon her motion for summary judgment and subsequently dismissed. It is not subject to this appeal.

**2. Yniguez's first motion to compel discovery**

Yniguez propounded her first set of interrogatories, requests for admissions ("RFAs") and request for production to Roque on January 17, 2012. After Roque failed to timely respond, on February 21, 2012, Yniguez sent Roque a meet and confer letter requesting that he respond to the discovery within ten days, or she would file a motion to compel. Roque failed to respond.

On March 16, 2012, Yniguez filed her first motion to compel discovery ("First Motion to Compel"), seeking Roque's compliance with discovery and a sanction of $1,265.00 for attorney's fees and costs incurred in bringing the motion. Roque did not oppose the motion.

After a hearing on April 4, 2012, the bankruptcy court granted the First Motion to Compel in part and denied it in part ("Discovery Order"). The court ordered Yniguez to serve another set of discovery requests on Roque by April 6, 2012, and ordered that Roque submit his responses to Yniguez by no later than May 7, 2012. Yniguez's request for monetary sanctions was denied. Yniguez served another set of discovery requests as ordered, which were a duplicate of what was sent on January 17, 2012. Roque timely provided certain records from his Bank of America accounts, but did not submit any responses to the RFAs or the interrogatories in violation of the Discovery Order.

**3. Yniguez's second motion to compel discovery**

After the court-ordered May 7 deadline had passed, on May 22, 2012, Yniguez sent Roque a second meet and confer letter, instructing him to submit the required RFAs and interrogatories within ten days. In response, Roque appeared at Yniguez's

-6-

attorney's office on May 29, 2012, and told a staff member that he would provide the required responses within ten days.  He did not.

On June 22, 2012, the bankruptcy court entered a civil minute order continuing the June 20, 2012 status conference to October 17, 2012, and ordering that all discovery, including any motions to compel discovery, be completed and/or filed by September 30, 2012.

When Roque had still failed to respond to the RFAs and interrogatories, Yniguez filed her second motion to compel discovery ("Second Motion to Compel") on August 14, 2012, seeking Roque's compliance with discovery, a monetary sanction of $1,265.00 for attorney's fees and costs incurred in bringing the motion, a sanction precluding Roque from offering any further evidence in his defense, and a sanction of default for Roque's failure to comply with the Discovery Order.

The bankruptcy court decided the merits of the Second Motion to Compel without oral argument on September 5, 2012.  It denied the motion as to the RFAs, because (1) an order compelling Roque's compliance was unnecessary, as the RFAs were effectively deemed admitted per Civil Rule 36(a)(3) based on his failure to respond, and (2) the automatic remedy of Civil Rule 36(a)(3) was a sufficient sanction, which is why, reasoned the court, requests for admissions were not listed in Civil Rule 37(a)(3) as a basis for a motion to compel discovery.  To the extent the Second Motion to Compel sought relief for Roque's failure to respond to the interrogatories and his incomplete responses to requests for production, the motion was continued to October 3, 2012.  Yniguez was ordered to submit by no later than September 26, 2012, a

supplemental declaration and copies of all discovery requests to which Roque had not responded or provided an incomplete response.

Roque filed an untimely opposition to the Second Motion to Compel on September 5, 2012, contending that he had either provided the requested documents or did not possess the documents Yniguez had requested. Roque did not explain why he had not answered the interrogatories.

On September 25, 2012, Yniguez filed the ordered supplemental declaration, listing the interrogatory and production requests propounded to Roque and showing the responses, or lack thereof, Roque had provided.

On October 2, 2012, the parties filed a joint status conference statement stating that Roque had not propounded any discovery on Yniguez, and that he did not anticipate doing so. In any event, the discovery deadline had already passed on September 30.

At the continued hearing on the Second Motion to Compel on October 3, 201, Roque admitted that he had not provided answers to the interrogatories by May 7, 2012, as required by the Discovery Order, but contended that he had not received them from Yniguez. The hearing on the Second Motion to Compel was continued again to November 7, 2012.

On October 31, 2012, Yniguez filed a document stating that Roque had finally responded to the propounded interrogatories and requests for production, and that she was satisfied with his responses.

After the continued hearing on November 7, 2012, the bankruptcy court entered a civil minute order granting Yniguez's

-8-

Second Motion to Compel to the extent it requested reasonable expenses. The court did not find Roque's representation that he had not received Yniguez's interrogatories credible. Roque had admitted that he received Yniguez's requests for production, which were sent with her interrogatories on January 17, 2012, and that he had responded by delivering certain documents. Accordingly, Yniguez was awarded monetary sanctions of $1,265.00 under Civil Rule 37(b)(2)(C). The court denied the motion as moot to the extent it sought discovery Roque had ultimately provided.

### 4. Yniguez's motion for summary judgment

Sixteen months after filing her adversary complaint, Yniguez filed a motion for summary judgment under § 523(a)(2)(A) and § 727(a)(2) on December 17, 2012 (the "MSJ"). The MSJ recited the facts regarding the Written Loans and the Oral Loans, providing all dates and amounts. Yniguez argued that Roque, who was also her employer and fiancee, induced her to make the Loans by making a series of intentional misrepresentations regarding the terms of repayment, the transfer of profits, and the grant of a percentage interest in EFR. Yniguez argued that she relied on Roque's misrepresentations and made the Loans over fifteen months, totaling $162,190. Contained within the MSJ were the RFAs that were deemed admitted. In support, Yniguez submitted her separate statement of undisputed facts.

A hearing on the MSJ was set for January 16, 2013. Roque did not file an opposition to the MSJ.

### 5. Roque's motion to continue the MSJ

On January 3, 2013, Roque filed an ex-parte motion to

continue the MSJ under Civil Rule 56(d)[5] so that he could obtain counsel to conduct his own discovery and seek to have the RFAs withdrawn ("Motion to Continue"). Roque contended that withdrawing the admissions and allowing discovery would enable him to obtain evidence which could raise triable issues of fact, including whether actual intent to defraud ever existed. Roque further contended that he lacked the expertise and sufficient time to prepare the responses to Yniguez's discovery. Therefore, argued Roque, because a continuance could defeat the MSJ, good cause existed to continue it for 180 days.

Yniguez opposed the Motion to Continue, contending that it should be denied for several reasons. First, throughout the adversary proceeding, which had been filed a year and a half earlier, Roque had sat on his rights, repeatedly delaying or making excuses for his non-performance. He had not filed any motions, propounded discovery, or even filed an opposition to the MSJ or disputed her statement of facts. Second, good cause did not exist to continue discovery when Roque had made no attempt to conduct discovery, he answered Yniguez's discovery only after two motions to compel had been filed, and the discovery cutoff was four months earlier. Finally, argued Yniguez, Roque's lack of expertise of the rules or lack of time was no excuse; if time was a factor he could have asked counsel for a continuance, but he chose instead not to provide any discovery responses until compelled to do so.

---

[5] Roque's Motion to Continue referenced Civil Rule 56(f), but former Civil Rule 56(f) became Civil Rule 56(d) under the 2010 amendments, which were in effect at the time.

-10-

Without a hearing, the bankruptcy court entered an order on January 7, 2013, denying the Motion to Continue on the grounds that Roque had not explained his failure to retain counsel until now.

**6.    The bankruptcy court's decision on the MSJ**

At the hearing on January 16, 2013, Roque did not expressly oppose the MSJ, but he did renew his request for a continuance, which was denied.  The bankruptcy court then announced that its tentative ruling, granting summary judgment on the § 523(a)(2)(A) claim and denying it as to the § 727(a)(2) claim, would be its final ruling.  The court determined that Yniguez had established the necessary elements for fraud under § 523(a)(2)(A), and ordered that she was entitled to summary judgment determining that the Loans totaling $162,190 were nondischargeable.  An order was entered on January 24, 2013 (the "MSJ Order").  Roque's timely appeal followed.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(I) & (J).  We now address our jurisdiction over this appeal.

Generally, orders granting partial summary without the certification required by Civil Rule 54(b) are interlocutory orders.  Belli v. Temkim (In re Belli), 268 B.R. 851, 856-57 (9th Cir. BAP 2001).  Unlike final orders, interlocutory orders decide merely one aspect of the case without disposing of the case in its entirety on the merits.  See United States v. Real Prop. Located at 475 Martin Ln., Beverly Hills, Cal., 545 F.3d 1134, 1141 (9th Cir. 2008).  The bankruptcy court granted the MSJ only as to

-11-

Yniguez's claim under § 523(a)(2)(A). However, once her motion to dismiss the § 727 claim was granted on April 1, 2013, the MSJ Order became a final, appealable order.[6] Dannenberg v. Software Toolworks, Inc., 16 F.3d 1073, 1075 (9th Cir. 1994)(judgments whose finality would normally depend upon a Civil Rule 54(b) certificate may be treated as final and appealable if remaining claims subsequently have been finalized)(citations omitted).

Orders denying a motion for a continuance and granting a motion to compel discovery are also generally interlocutory. A court's ruling on a motion to continue does not end the litigation. The same is true for a motion to compel discovery. United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc., 444 F.3d 462, 471 (6th Cir. 2006); Hoffenberg v. Cohen (In re Towers Fin. Corp.), 164 B.R. 719, 720 (S.D.N.Y. 1994) ("Bankruptcy court orders granting or denying discovery do not finally dispose of an entire claim on which relief may be granted, and therefore are generally treated as interlocutory and not appealable as of right."). Nonetheless, interlocutory orders such as these merge into the final order deciding the merits. See Real Prop. Located at 475 Martin Ln., Beverly Hills, Cal., 545 F.3d at 1141 (interlocutory orders entered prior to the judgment merge into the judgment and may be challenged on appeal). Consequently, the continuance order and the orders respecting both motions to compel discovery merged into the final MSJ Order. As such, they

---

[6] Although the bankruptcy court entered the MSJ Order granting summary judgment in part, no judgment has ever been entered. Nonetheless, because 150 days has run since the entry of the MSJ Order, no separate judgment is necessary under Civil Rule 58 for that order to be final and appealable.

-12-

can be challenged on appeal. This is true even though these orders were not designated in Roque's notice of appeal. Disabled Rights Action Comm. v. Las Vegas Events, Inc., 375 F.3d 861, 872 n.7 (9th Cir. 2004)(appeal of final judgment draws into question all earlier, non-final orders and rulings which produced the judgment).

Accordingly, we have jurisdiction under 28 U.S.C. § 158.

### III. ISSUES

1. Did the bankruptcy court abuse its discretion in granting the motions to compel discovery?

2. Did the bankruptcy court abuse its discretion in denying the Motion to Continue?

3. Did the bankruptcy court err in granting the MSJ as to the § 523(a)(2)(A) claim?

### IV. STANDARDS OF REVIEW

Our standard in reviewing the bankruptcy court's decision to grant a motion for summary judgment is de novo. Sigma Micro Corp. v. Healthcentral.com (In re Healthcentral.com), 504 F.3d 775, 783 (9th Cir. 2007).

An order compelling a party to comply with discovery requests is reviewed for an abuse of discretion. Epstein v. MCA, Inc., 54 F.3d 1422, 1423 (9th Cir. 1995)(per curiam). The imposition of discovery sanctions is reviewed for an abuse of discretion. See Paladin Assocs., Inc. v. Mont. Power Co., 328 F.3d 1145, 1164 (9th Cir. 2003). The bankruptcy court's decision not to permit additional discovery pursuant to Civil Rule 56(d) is also reviewed for an abuse of discretion. Chance v. Pac-Tel Teletrac Inc., 242 F.3d 1151, 1161 n.6 (9th Cir. 2001)(applying former Civil

-13-

Rule 56(f)). "We will only find that the [bankruptcy] court abused its discretion if the movant [under Civil Rule 56(d)] diligently pursued its previous discovery opportunities, and if the movant can show how allowing additional discovery would have precluded summary judgment." Qualls by and through Qualls v. Blue Cross of Cal., Inc., 22 F.3d 839, 844 (9th Cir. 1994). A bankruptcy court abuses its discretion if it applied the wrong legal standard or its findings were illogical, implausible or without support in the record. TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011).

We can affirm on any basis supported by the record, even where the issue was not expressly considered by the bankruptcy court. O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 957 (9th Cir. 1989).

## V. DISCUSSION

**A. The bankruptcy court did not abuse its discretion respecting the motions to compel discovery.**

The only argument Roque raises here is that the bankruptcy court abused its discretion in failing to give him, a pro se litigant, the proper deference required as to Yniguez's motions to compel. Roque does not explain exactly what "deference" he should have been given, but, considering the record, we disagree.

The initial discovery deadline in this case was set for April 13, 2012. Yniguez propounded her first set of interrogatories, RFAs and requests for production to Roque on January 17, 2012. The documents stated that responses were subject to Civil Rules 26, 33 and 34, and Rule 7026. When Roque failed to comply, Yniguez's counsel sent Roque a meet and confer

-14-

letter requesting that he respond to the propounded discovery within ten days or risk facing a motion to compel. Roque still failed to respond.

Roque did not oppose Yniguez's First Motion to Compel. On April 4, 2012, the bankruptcy court entered the Discovery Order, granting the First Motion to Compel to the extent it sought discovery and ordering Roque to submit his responses to the interrogatories, RFAs and requests for production to Yniguez by no later than May 7, 2012. Thus, in addition to the time Roque had to answer discovery between January 17 and April 4, 2012, the Discovery Order gave Roque an additional thirty-three days to submit his responses, including the RFAs. Yniguez's first request for monetary sanctions was denied.

In response to the Discovery Order, Roque provided only certain bank records; he did not submit any responses to the RFAs or the interrogatories by the May 7 deadline. Yniguez sent Roque a second meet and confer letter on May 22, 2012, instructing him to submit his answers to the RFAs and interrogatories as ordered within ten days. Although Roque promised that he would, he did not. The discovery deadline was then extended to September 30.

When Roque had still not responded to the Discovery Order, Yniguez filed her Second Motion to Compel on August 14, 2012, seeking Roque's compliance, a monetary sanction of $1,265.00 for attorney's fees and costs incurred in bringing the motion and other relief. Roque filed an untimely opposition on the day the bankruptcy court rendered its decision on the matter. The court denied the motion as to the RFAs, because Roque's failure to respond to such matters had been deemed admitted under Civil

-15-

Rule 36(a)(3).  The motion as to Roque's failure to respond to interrogatories and his incomplete responses to requests for production was continued to October 3.  At that continued hearing, Roque admitted he had not provided answers to the interrogatories by May 7, 2012, as directed by the Discovery Order.

Because Roque had violated the Discovery Order, and because Yniguez had to file another motion to compel before Roque finally provided the ordered responses, the bankruptcy court granted Yniguez's Second Motion to Compel to the extent it requested reasonable expenses of $1,265.00 incurred in bringing the motion under Civil Rule 37(b)(2)(C),[7] incorporated by Rule 7037.  Contrary to Roque's contention, the bankruptcy court did not grant Yniguez's requests to preclude him from offering evidence in his defense or for default.

While we recognize the leniency afforded pro se litigants in matters of pleadings and briefing,[8] they are nonetheless not excused from compliance with the rules of procedure.  Warrick v. Birdsell, 278 B.R. 182, 187 (9th Cir. BAP 2002); Ghazali v. Moran, 46 F.3d 52, 54 (9th Cir. 1995)(although pro se pleadings are construed liberally, pro se litigants are nonetheless bound by the rules of procedure); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987), overruled on other grounds by Lacey v. Maricopa Cnty.,

---

[7] When a party fails to obey a discovery order, instead of or in addition to the sanctions enumerated in Civil Rule 37(b)(2)(A), "the court must order the disobedient party . . . to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."

[8] See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1986)(citing cases).

-16-

693 F.3d 896 (9th Cir. 2012)("Pro se litigants must follow the same rules of procedure that govern other litigants.").

Roque's failure to respond to discovery, particularly after being ordered to do so, is not analogous to a case where a pro se litigant has submitted an inartful pleading the court should construe with liberality. Even if Roque was initially ignorant of the discovery requirements of Civil Rules 26, 33 and 34, he was on notice upon entry of the Discovery Order on April 4, 2012, of what was required. Other than submitting a few bank records, Roque failed to submit responses to the RFAs or the interrogatories, which forced Yniguez to file the Second Motion to Compel and incur attorney's fees and costs, but only after she sent Roque a second courtesy letter asking that he submit the responses within ten days, which he ignored.

For his failure to comply with the Discovery Order, the bankruptcy court sanctioned Roque $1,265.00 under Civil Rule 37(b)(2)(C) for Yniguez's reasonable expenses incurred bringing the Second Motion to Compel. To the extent Roque contends the sanctions were unjustified, we discern no error in that ruling. Other than his pro se status, which is a non starter, Roque offered no substantial justification for why he could not comply with discovery or, more importantly, the Discovery Order. Thus, because the Second Motion to Compel was a proper Civil Rule 37(b) motion, an award of expenses including attorney's fees was appropriate.

Roque was given more than ample time and opportunity to respond to discovery before he was sanctioned, and his argument to the contrary lacks merit. The bankruptcy court and counsel for

-17-

Yniguez gave Roque great leniency, particularly because he is a pro se litigant. Accordingly, we see no abuse of discretion by the bankruptcy court respecting its decisions on the motions to compel discovery.[9]

**B. The bankruptcy court did not abuse its discretion in denying the Motion to Continue.**

Under Civil Rule 56(d), incorporated by Rule 7056, the bankruptcy court may deny a summary judgment motion, or continue the hearing on the motion, where the nonmoving party by affidavit shows that it "cannot present facts essential to justify its opposition[.]" Pursuant to this rule, summary judgment is to be refused "where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 n.5 (1986). Generally, a party files a Civil Rule 56(d) motion after the opposing party files a motion for summary judgment early in the proceedings, before the parties have had ample time to conduct discovery.

To justify a continuance of summary judgment under Civil Rule 56(d), a party must: (1) set forth in affidavit form the

---

[9] Although not raised by Roque, we agree with the bankruptcy court's decision to deny the Second Motion to Compel to the extent it sought responses from Roque on the RFAs, because the RFAs were already deemed admitted. Civil Rule 36(a)(3) provides that a party's failure to timely respond to a request for admission within thirty days of being served results in the admission being conclusively deemed admitted. Conlon v. United States, 474 F.3d 616, 621 (9th Cir. 2007). The operation of Civil Rule 36(a)(3) is automatic and self-executing. F.T.C. v. Medicor LLC, 217 F.Supp.2d 1048, 1053 (C.D. Cal. 2002) ("No motion to establish the admissions is needed because Federal Rule of Civil Procedure 36(a) is self-executing.")(citing Schwarzer, Tashima & Wagstaffe, CAL. PRACTICE GUIDE: FED. CIV. PROC. BEFORE TRIAL, at ¶¶ 811-12 (Rutter Group 2002)).

specific facts it hopes to elicit through further discovery; (2) show the facts sought exist; and (3) show that the sought after facts are essential to oppose summary judgment. <u>Family Home & Fin. Ctr. v. Fed. Home Loan Mortg. Corp.</u>, 525 F.3d 822, 827 (9th Cir. 2008); <u>Mackey v. Pioneer Nat'l Bank</u>, 867 F.2d 520, 524 (9th Cir. 1989) (party seeking postponement of a summary judgment motion must "show how additional discovery would preclude summary judgment and why [it] cannot immediately provide 'specific facts' demonstrating a genuine issue of material fact.")(citing former Civil Rule 56(f)). The burden is on the party seeking to conduct additional discovery to put forth sufficient facts to show that the evidence sought exists. <u>Volk v. D.A. Davidson & Co.</u>, 816 F.2d 1406, 1416 (9th Cir. 1987).

Roque contends the bankruptcy court abused its discretion by denying the Motion to Continue the MSJ because a continuance was of immense importance to him, considering the amount of money at stake, and because his affidavit established grounds to grant a continuance. We disagree that Roque's affidavit satisfied the requirements for continuance of a summary judgment motion. While he alluded that further discovery "could" raise triable issues of fact to oppose the MSJ, such as whether he made any false statements to Yniguez, or whether he actually intended to defraud her, or whether Yniguez unjustifiably relied on any alleged false statements, he did not establish: (1) what "specific facts" he hoped to elicit through further discovery, or (2) that these facts actually existed, or (3) why these presumably material facts, which were not within Yniguez's exclusive control, could not have been presented before to oppose the MSJ. The bankruptcy court

-19-

found as much, denying the Motion to Continue on the basis that Roque had failed to explain why he had not retained counsel until now.

Recognizing that we can affirm on any basis supported by the record, the bankruptcy court was also free to deny the Motion to Continue on the grounds that Roque failed to conduct discovery in a diligent manner. Pfingston v. Ronan Eng'g Co., 284 F.3d 999, 1005 (9th Cir. 2002)(applying former Civil Rule 56(f) and holding that the failure to conduct discovery diligently is grounds for denial of a continuance of a motion for summary judgment)(citing Mackey, 867 F.2d at 524)("A movant cannot complain if it fails diligently to pursue discovery before summary judgment"); Nidds v. Schindler Elevator Corp., 113 F.3d 912, 921 (9th Cir. 1996)(if the party moving for a Civil Rule 56(f) continuance has had ample opportunity to conduct discovery, and has not diligently done so, the request for further discovery may be denied). "Stated another way, 'we will only find that the [bankruptcy] court abused its discretion if the movant diligently pursued its previous discovery opportunities, and if the movant can show how allowing additional discovery would have precluded summary judgment.'" Chance, 242 F.3d at 1161 n.6 (quoting Byrd v. Guess, 137 F.3d 1126, 1131 (9th Cir. 1998)).

Yniguez did not file the MSJ until sixteen months after she filed her adversary complaint and nearly three months after the close of discovery, which was not "early" in the proceeding. The discovery deadline was initially set for April 13, 2012, but, because of Roque's dilatory conduct, it was extended until September 30, 2012. Roque never propounded any discovery of his

-20-

own, and he never sought any extensions to do so. In the joint status conference statement filed on October 2, 2012, Roque stated that he had not propounded discovery and that he did not anticipate propounding any. Roque filed his Motion to Continue well after the close of discovery — three months later to be exact — and just thirteen days before the MSJ hearing.

Accordingly, on this record, the bankruptcy court was within its discretion to deny the Motion to Continue.

**C.    The bankruptcy court erred in granting the MSJ as to the § 523(a)(2)(A) claim.**

**1.    Summary judgment standards**

Summary judgment is appropriate where the pleadings and the evidence show that no genuine issue of any material fact exists and that the moving party is entitled to a judgment as a matter of law. See Civil Rule 56(a), incorporated by Rule 7056. In evaluating the motion, we view all facts and inferences in the light most favorable to the non-moving party. Anderson, 477 U.S. at 250. Failure to "properly address another party's assertion of fact as required by [Civil] Rule 56(c)" permits the court to "consider the fact undisputed." Civil Rule 56(e)(2). If facts are considered undisputed because a party fails to properly address them, the court may "grant summary judgment if the motion and supporting materials — including facts considered undisputed — show the movant is entitled to it[.]" Civil Rule 56(e)(3).

**2.    Roque's failure to oppose the MSJ does not preclude our review**

Because Roque failed to oppose the MSJ or file his own statement of disputed facts in response, the facts contained in

-21-

Yniguez's statement of undisputed facts ("SOF") filed in support of the MSJ were uncontroverted.  See Local Rule 9014-1(f)(B);[10] Civil Rule 56(e)(2).  As a result, he is also unable to challenge these facts on appeal.  United States v. Kitsap Physicians Serv., 314 F.3d 995, 999 (9th Cir. 2002).

Nonetheless, Roque contends that the evidentiary record failed to support the MSJ.  Notwithstanding his failure to preserve any factual issues for appeal, we will examine the record to determine if any basis for reversal is clearly evident, because our de novo review necessarily includes determination as to whether Yniguez is entitled to judgment as a matter of law.  See Hoover v. Switlik Parachute Co., 663 F.2d 964, 967 (9th Cir. 1981) ("Even where no evidence is presented in opposition to the motion, summary judgment should not be granted if the evidence in support of the motion is insufficient.")(citations omitted).

### 3. Yniguez's evidence did not establish all of the necessary elements for fraud under § 523(a)(2)(A).

The Code excepts from discharge any debt for money, property,

---

[10] Local Rule 9014-1(f)(B) provides, in relevant part:

Opposition, if any, to the granting of the motion shall be in writing and shall be served and filed with the Court by the responding party at least fourteen (14) days preceding the date or continued date of the hearing.  Opposition shall be accompanied by evidence establishing its factual allegations.  Without good cause, no party shall be heard in opposition to a motion at oral argument if written opposition to the motion has not been timely filed.  Failure of the responding party to timely file written opposition may be deemed a waiver of any opposition to the granting of the motion or may result in the imposition of sanctions.
. . . .
Failure to file the separate statement shall be construed as consent to resolution of the motion and all disputed material factual issues pursuant to Fed. R. Civ. P. 43(c).

services, or credit obtained by false pretenses, a false representation, or actual fraud. § 523(a)(2)(A). To prevail on a claim under § 523(a)(2)(A), a creditor must demonstrate five elements: (1) misrepresentation, fraudulent omission or deceptive conduct by the debtor; (2) knowledge of the falsity or deceptiveness of the debtor's statement or conduct; (3) an intent to deceive; (4) justifiable reliance by the creditor on the debtor's statement or conduct; and (5) damage to the creditor proximately caused by its reliance on the debtor's statement or conduct. Oney v. Weinberg (In re Weinberg), 410 B.R. 19, 35 (9th Cir. BAP 2009)(citing Turtle Rock Meadows Homeowners Ass'n v. Slyman (In re Slyman), 234 F.3d 1081, 1085 (9th Cir. 2000)). "The creditor bears the burden of proof to establish all five of these elements by a preponderance of the evidence." Id. (citing Slyman, 234 F.3d at 1085).

RFA nos. 3 and 4 established the Written Loans Yniguez made to Roque for $47,000. RFA no. 5 established that Yniguez transferred to Roque "all loan amounts agreed upon." RFA no. 6 established that "the loans . . . contained conditions of repayment." In other words, the Loans were not gifts, and Yniguez expected to be repaid. RFA no. 7 established that Roque failed to make "any loan payments" to Yniguez. RFA nos. 14 and 15 established that Roque never began repayment of the Written Loans. Finally, RFA no. 16 established that Roque never intended to pay "any of the loan payments" to Yniguez.

SOF nos. 4-17 established each of the Loans Yniguez made to Roque. SOF no. 18 established that Roque never tendered any payments on the "loans." SOF no. 20 established that Roque had

-23-

solicited the "loans" from Yniguez without having any intention of ever repaying any of them.

As the bankruptcy court correctly found, the undisputed facts showed that Roque made misrepresentations when he agreed to the Loans and promised to repay the money to Yniguez. While a broken promise of future performance is not ordinarily a false representation for purposes of § 523(a)(2)(A), "a promise made with a positive intent not to perform or without a present intent to perform satisfies § 523(a)(2)(A)." Rubin v. West (In re Rubin), 875 F.2d 755, 759 (9th Cir. 1989). The undisputed facts show that Roque never intended to repay any of the Loans as agreed. Roque's failure to repay any amount of the Loans is further evidence that he never intended to perform his promise. So is the fact that he never transferred any interest in EFR to Yniguez or shared net profits with her as agreed. Accordingly, Roque's promises that he would repay the Loans were false representations, thereby satisfying the first element.

The record also establishes the second and third elements — knowledge of the falsity and an intent to deceive. Because Roque never intended to repay the Loans, he knew his promises to repay were false when he made them. Further, as noted above, the fact that Roque never attempted to satisfy his agreement to transfer any interest in EFR to Yniguez or share net profits with her is additional evidence supporting knowledge of his false statements of repayment. Roque's failure to repay the Loans, combined with his admission that he never intended to repay them, allows us to infer that Roque intended to deceive Yniguez when he promised repayment each time she extended a loan to him. Intent to deceive

-24-

is a question of fact which may be inferred from surrounding circumstances. Cowan v. Kennedy (In re Kennedy), 108 F.3d 1015, 1018 (9th Cir. 1997). See also 4 COLLIER ON BANKRUPTCY ¶ 523.08[1][d] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2012)(intent may be inferred from the fact that the debtor failed to take any steps to perform under the contract).

We conclude, however, that Yniguez failed to establish the fourth element of justifiable reliance. Whether Yniguez justifiably relied on Rogue's misrepresentations is a question of fact. Eugene Parks Law Corp. Defined Benefit Pension Plan v. Kirsh (In re Kirsh), 973 F.2d 1454, 1456 (9th Cir. 1982); Deitz v. Ford (In re Deitz), 469 B.R. 11, 34 (9th Cir. BAP 2012). Nowhere in the record did Yniguez provide any direct, admissible evidence that she justifiably relied on Roque's false representations to repay the Loans. The RFAs made no reference to justifiable reliance and neither did the SOF. Unfortunately, Yniguez did not submit a declaration in support of the MSJ which could have established this fact. Yniguez's attorney simply argued in the MSJ that Yniguez "relied on the Debtor's misrepresentations and made a series of loans over 15 months totaling $162,190.00." MSJ at 6:20-21. Arguments and statements of counsel are not evidence. Wood v. Stratos Prod. Dev., LLC (In re Ahaza Sys., Inc.), 482 F.3d 1118, 1122 n.1 (9th Cir. 2007); Exeter Bancorporation v. Kemper Sec. Group, Inc., 58 F.3d 1306, 1312 n.5 (8th Cir. 1995) (statements of counsel are not evidence and do not create issues of fact)(citing United States v. Fetlow, 21 F.3d 243, 248 (8th Cir. 1994)).

The bankruptcy court essentially "inferred" that Yniguez must

-25-

have justifiably relied on Roque's false statements of repayment each time she extended a loan to him or she would not have given him the money. This may be a reasonable inference, especially considering their relationship, but we could not locate, and the bankruptcy court did not cite, any authority allowing a court to infer justifiable reliance, such as it can with intent. The only case we found held to the contrary, at least when the borrower and lender have a direct relationship. See In re Hulbert, 150 B.R. 169, 172 (Bankr. S.D. Tex. 1993)(applying justifiable reliance standard and determining that when the case involves a direct borrowing relationship between lender and borrower, as opposed to a credit card relationship, the creditor must show that it relied on debtor's fraudulent representation in issuing the loan; reliance was not established because creditor offered no direct evidence on that issue). As a result, we vacate and remand the MSJ Order.

## VI. CONCLUSION

Based on the foregoing reasons, we AFFIRM the order denying Roque's Motion to Continue and AFFIRM the orders granting Yniguez's motions to compel discovery. However, we VACATE and REMAND the MSJ Order.